## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

PETER J. CRESCI,

        Plaintiff,

    v.

SUSAN GYESS (aka SUSAN GYESS
GREGORY),

        Defendants.

Civ. No. 17-2342 (KM)

OPINION

### KEVIN MCNULTY, U.S.D.J.:

Peter J. Cresci, an attorney,[1] brings this action against Susan Gyss[2] based upon her actions as municipal prosecutor for the City of Bayonne in 2014. The operative pleading, the Amended Complaint ("AC", DE 14), asserts federal § 1983 claims of selective and malicious prosecution; excessive force under the Fourth Amendment; false imprisonment; abuse of process; First Amendment retaliation; and conspiracy. It also asserts state-law tort claims of

---

[1] According to njcourts.gov, Cresci is suspended from practice before the New Jersey state courts. He is suspended from practice before this federal court as well. In this action, however, he appears as plaintiff *pro se,* as he remains entitled to do. Because of his legal training, I do not afford his complaint the liberal reading due the pleadings of an ordinary *pro se* litigant. *See Kenny v. United States*, No. CIV 08–3921 GEB, 2009 WL 276511, at *8 (D.N.J. Feb. 5, 2009) (Brown, C.J.) ("[T]his pro se Plaintiff is an attorney, and therefore, has substantial legal training and professional experience, undermining the rationale set forth by the Supreme Court in *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).") (citing *Allen v. Aytch*, 535 F.2d 817, 821 n. 21 (3d Cir. 1976) (stating that a third year law student who drafted a complaint had "substantial legal training" and therefore declining to construe the complaint liberally)).

[2] In her papers, the defendant states that her name is properly spelled "Gyss" and that she is not also known as "Gregory." When referring to her in this Opinion, I will use the name "Susan Gyss."

1

tortious interference with prospective economic advantage and with contract, and for a declaratory judgment that Gyss was ineligible to serve as prosecutor.

Gyss has filed a comprehensive Rule 12(b)(6) motion to dismiss the Amended Complaint for failure to state a claim. It cites such fundamental grounds as prosecutorial immunity. Because Cresci's response simply fails to address many of those grounds, I have discussed them only briefly. For the reasons stated herein, the motion to dismiss the Amended Complaint is granted, with prejudice.

## I. Background

The allegations of the Amended Complaint are assumed to be true for purposes of this motion to dismiss. The complaint scrambles the chronology, omits key dates, and inexcusably omits key facts about the state-court proceedings on which it is based. It contains nonspecific, collateral objections to the New Jersey Intergovernmental Insurance Fund providing liability coverage to Gyss, the conspiratorial bringing of unspecified claims, undescribed press releases, and so forth. I concentrate here on the allegations that seem most pertinent to the § 1983 causes of action.

Cresci was charged in municipal court *via* a criminal complaint-summons, No. S2014-060.[3] The charge was harassment under N.J. Stat. Ann. § 2C:33-4(a), a disorderly persons offense. (AC ¶ 6) The complaining witness seems to have been Adeline Gonzales, who was Mr. Cresci's tenant under a lease. (*See* AC ¶ 59) The genesis of the harassment complaint was "a landlord-tenant issue, in which the tenant was provided 90 plus days to vacate one of Plaintiff's properties." (AC ¶ 6) Gonzales "denied the harassment complaint . . . was anything more than a landlord-tenant issue."[4] (AC ¶ 6) "Subsequently, the

---

[3] The Amended Complaint does not allege that Cresci was arrested; in addition, it alleges that the municipal court complaint had a docket number prefix of "S," implying a complaint-summons. (AC ¶ 6) That this was a citizen complaint is corroborated by the procedures alleged to have been followed. (*See* n.6, *infra*.)

[4] The meaning is obscure. It does not seem to be an allegation that Gonzales recanted or abandoned her claims voluntarily. (*See* AC ¶ 16 (alleging that Gonzales filed an ethical complaint against the presiding Chief Judge of the municipal court))

Municipal Court Administrator denied probable cause, and Presiding Municipal Court Judge [identified as Frank Carpenter] denied probable cause." (AC ¶ 6)[5]

Gyss, it is alleged, appealed from that denial. In doing so, she "bypassed the normal process and appealed the probable cause determination to her Husband's Office." (AC ¶ 7) Gyss was allegedly married to the then-Acting Hudson County Prosecutor, Gaetano Gregory. She "filed the appeal to her husband, Gaetano Gregory, at the Hudson County Prosecutor's Office without the knowledge of Presiding Municipal Court Judge Frank Carpenter. . . . the very Judge who denied probable cause on this Landlord-Tenant issue." (AC ¶ 16) Such an appeal does not comply with applicable procedures in the Rules of Court, N.J. Ct. R. 7:13-1 and R. 3:24(c).[6]

Apparently the charges remained in place or were reinstated; the Amended Complaint does not indicate clearly what happened. Gyss was "able to get" the appeal before "Superior Court Judge dePascale, a former co-worker of Defendant [Gyss]" (AC ¶ 17) in order "to confirm the probable cause determination." (AC ¶ 12).

"After several required appearances in court, the case was moved to [the] Town of Kearny. On April 7, 2015 Plaintiff was notified that a dismissal of the charges was made by Judge McKeon." (AC ¶ 10; *see also* AC ¶ 14)

The Amended Complaint at numerous points alleges that "Defendant [Gyss] was violating the law by practicing criminal law within the county in which her husband was the county prosecutor." (AC ¶ 15; *see also* ¶¶ 9, 28) It

---

[5]    The practice in New Jersey municipal court is that, where the complainant is not a law enforcement officer but an ordinary citizen, a complaint-warrant or complaint-summons "may be issued only by a judge, or, if authorized by the judge, by a municipal court administrator or deputy court administrator of a court with jurisdiction in the municipality . . . ." It must be accompanied by a finding of probable cause by such "judicial officer." If a court administrator or deputy court administrator finds that no probable cause exists, "that finding shall be reviewed by the judge," who, if he or she concurs, shall dismiss the complaint. N.J. Ct. R. 7:2-2(a)(1).

[6]    In AC ¶ 16, this material is alleged directly. Elsewhere in the Amended Complaint, however, a similar allegation is made "on information and belief." (AC ¶ 12)

further alleges that Cresci, as an attorney, had a history of suing the City and participating in investigations involving associates of Gyss. (AC ¶ 47)

The Amended Complaint asserts nine lettered causes of action:

A. Malicious and selective prosecution without probable cause (§ 1983)

B. Excessive force (§ 1983)

C. Unlawful detention (§ 1983)

D. Abuse of process (§ 1983)

E. First Amendment retaliation (§ 1983)[7]

F. Conspiracy to violate civil rights

G. Unlawful interference with prospective economic advantage

H. Tortious interference with contract

J. [8]Declaratory judgment that "pursuant to statute" Gyss was improperly practicing criminal law in the same county in which her husband was acting prosecutor.

## II. The Applicable Standard

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-

---

[7]    Although the title of this Count additionally cites 42 U.S.C. § 2000e, that is not the gist of the allegations. I treat this as a First Amendment retaliation claim. *See* Point IV.A.4, *infra*.

[8]    There is no Claim I.

plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### III.    Prosecutorial Immunity (Claims A, B, C, D, E & F)

Before considering arguments directed to particular causes of action in the Amended Complaint, I address Gyss's overall assertion of prosecutorial immunity with respect to the federal Constitutional claims.

"Prosecutorial immunity is 'more than a mere defense to liability.' *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008). Rather, it is an entitlement not to stand trial and serves as a complete bar to suit. *Mitchell v. Forsyth*, 472 U.S. 511, 512 (1985)." *Mujaddid v. Wehling*, No. CV 12-7750, 2016 WL 310742, at *6 (D.N.J. Jan. 25, 2016) (Simandle, C.J.), *aff'd*, 663 F. App'x 115 (3d Cir. 2016). "[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under [§ ] 1983". *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [her] role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273. *Accord Williams v. Rivera*, No. CIV. A. 05-4451, 2006 WL 469949, at *4–5 (D.N.J. Feb. 27, 2006) (Greenaway, J.).

> A prosecutor's appearance in court as an advocate in support of an application for a search warrant and the presentation of evidence at such a hearing are protected by absolute immunity. Likewise, prosecutors are absolutely immune from liability when appearing before grand juries to present evidence. *Burns v. Reed*, 500 U.S. 478, 492 (1991). "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [her] role as an advocate for the State, are

entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

"Absolute" immunity, despite the terminology, is not unlimited in scope. It applies where the prosecutor is acting *qua* prosecutor, but not otherwise:

> A prosecutor is not entitled to absolute immunity, however, for actions undertaken in some other function. *See Kalina v. Fletcher*, 522 U.S. 118, 129–31, 118 S. Ct. 502, 139 L.Ed.2d 471 (1997) (holding that prosecutor is not protected by qualified immunity for attesting to the truth of facts contained in certification in support of arrest warrant, as in her provision of such testimony she functioned as a complaining witness rather than a prosecutorial advocate for the state); *Burns v. Reed*, 500 U.S. 478, 492–96, 111 S. Ct. 1934, 114 L.Ed.2d 547 (1991) (the provision of legal advice to police during pretrial investigation is not protected by qualified immunity); *Buckley*, 509 U.S. at 276–78 (prosecutor is not acting as an advocate, and is not entitled to absolute immunity, when holding a press conference or fabricating evidence); *see also Yarris v. County of Del.*, 465 F.3d 129 (3d Cir. 2006) (analyzing when a prosecuting attorney is, and is not, entitled to absolute immunity for allegedly wrongful acts in connection with a prosecution and holding, for example, that a prosecutor is not entitled to absolute immunity for deliberately *destroying* highly exculpatory evidence, but is entitled to immunity for deciding to deliberately *withhold* exculpatory evidence before and during trial).

*Delbridge v. Whitaker*, Civ. No. 09-4227, 2010 WL 1904456, at *6 (D.N.J. May 10, 2010) (Wigenton, J.).

The applicability of immunity depends on the nature of the function being performed—*i.e.*, whether the prosecutor is acting as a prosecutor in pursuing and disposing of charges—not on whether that function is performed properly:

> The availability of absolute prosecutorial immunity against an action under § 1983 depends on "the functional nature of the activities rather than the respondent's status" as a prosecutor. *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976). Immunity attaches when a prosecutor engages "with the judicial phase of the criminal process," but not when she is involved in "certain investigative activities" before a criminal action is initiated and presented to a

court. *Id.* at 430. A prosecutor enjoys immunity from suit even where she has engaged in "malicious or dishonest action," so long as she was acting as the state's advocate at the time. *Id.* at 427; *see also Odd,* 538 F.3d at 208.

*Mujaddid v. Wehling,* 2016 WL 310742 at *6.

Thus, a prosecutor is absolutely immune when making a decision to prosecute, "even where [she] acts without a good faith belief that a wrongdoing has occurred." *Kulwicki v. Dawson,* 969 F.2d 1454, 1463–64 (3d Cir.1992); *Rose v. Bartle,* 871 F.2d 331, 343 (3d Cir.1989). In this regard, a falsely-charged defendant may be "remedied by safeguards built into the judicial system," such as dismissal of the charges. *Kulwicki,* 969 F.2d at 1464.

Prosecutors also are absolutely immune from a civil suit for damages under § 1983 for: (1) instituting grand jury proceedings without proper investigation and without a good faith belief that any wrongdoing occurred, [citing *Schrob v. Catterson,* 948 F.2d 1402, 1411 (3d Cir.1991)]; *Rose v. Bartle, supra;* (2) initiating a prosecution without a good faith belief that any wrongdoing has occurred, *Kulwicki,* 969 F.2d at 1463–64; (3) soliciting false testimony from witnesses in grand jury proceedings, probable cause hearings, and trials, *Burns,* 500 U.S. at 490; *Kulwicki,* 969 F.2d at 1467; and (4) the knowing use of perjured testimony in a judicial proceeding, *Imbler,* 424 U.S. at 424–27; *Schrob,* 948 F.2d at 1417; *Brawer v. Horowitz,* 535 F.2d 830 (3d Cir.1976).

*Williams,* 2006 WL 469949, at 5.

The question, then, is whether Cresci's claims are based on Gyss's performance of her prosecutorial function of bringing and pursuing criminal charges. At the heart of Claims A, B, C, D, E, and F are allegations that Gyss brought and pursued harassment charges without probable cause and with retaliatory motives. Following an alleged decision by the chief municipal court judge that probable cause was lacking, Gyss appealed to the office of the Acting County Prosecutor (her husband), and the Superior Court (a judge who had once been a colleague). This appeal is alleged in the vaguest terms. In any event, however, such appeal efforts are within the prosecutorial function of pursuing charges. For whatever reason, the charges were lodged, although

venue was moved to Kearny. (At this point, no further involvement of Gyss appears to be alleged.). It was in Kearny that they were dismissed.

These are prosecutorial functions, intimately bound up with the litigation of criminal charges. True, the complaint states that those functions were performed in a wrongful *manner*—Gyss, it is alleged, did not possess probable cause, acted out of bad motives, had a disabling conflict of interest because of her husband's position, or did not comply with State rules, N.J. Ct. R. 7:13-1 and R. 3:24(c), governing procedures on appeal. But it is the prosecutorial function, not the rightful or wrongful exercise of that function, which gives rise to immunity. Prosecutorial immunity attaches to even knowing presentation of perjured testimony or pursuit of unfounded charges; surely these lesser conflicts of interest or procedural infirmities would be covered as well.

With respect to municipal prosecutors—indeed, the Bayonne municipal prosecutor in particular—this Court has applied absolute prosecutorial immunity to dismiss constitutional claims of malicious prosecution and related causes of action. *Mujaddid v. Wehling*, *supra* (Vineland municipal prosecutors immune from claim of malicious prosecution); *Delbridge v. Whitaker*, *supra* (Bayonne municipal prosecutor immune from suit for claims arising from her acts in initiating or pursuing a criminal prosecution); *Williams v. Rivera*, *supra* (Bayonne municipal prosecutor immune from § 1983 claims of malicious prosecution, retaliation, etc.). *See also Duffy v. Freed*, 452 F. App'x 200, 202 (3d Cir. 2011) (affirming dismissal of ADA claim of retaliatory prosecution brought by attorney against Galloway municipal prosecutor, finding prosecutor immune from suit based on his refusal to dispose of speeding ticket case on the basis of a "standard" plea deal); *Fleming v. United Parcel Serv., Inc.*, 255 N.J. Super. 108, 167–68, 604 A.2d 657, 686–87 (Law Div. 1992) (municipal prosecutor of Saddle Brook is immune from federal and state law claims of

malicious prosecution, abuse of process, slander, etc.), *aff'd,* 273 N.J. Super. 526, 642 A.2d 1029 (App. Div. 1994).[9]

Three of the Constitutional claims, although apparently barred by prosecutorial immunity, are phrased so unclearly as to merit further discussion. Counts B and C (excessive force and unlawful detention), as commonly understood, would not necessarily implicate the prosecutorial function. Indeed, those causes of action are ordinarily not asserted against a prosecutor at all, but against the police in connection with a defendant's arrest and detention *prior* to the bringing of criminal charges. Here, however, Cresci seems to assert that the mere pendency of charges or the requirement that he make routine court appearances constituted excessive force or unlawful

---

[9]     Cresci, in his opposing brief, makes no relevant response.

In Point I he argues that Gyss is not entitled to "sovereign immunity," which may be true but is irrelevant to any point asserted in the motion to dismiss. (Pl. Brf. 7) The discussion then veers to *respondeat superior,* also irrelevant because the Amended Complaint asserts claims against Gyss based on her own acts.

Also in Point I, Cresci argues that a reasonable person in Gyss's position would have understood that her acts were unlawful, but that she "apparently cannot read [N.J. Ct.] R. 7:13-1 and R. 3:24(c) and 2C:33-4(a) which does not allow an appeal without proper approval from the Municipal Court, its Presiding Judge Frank Carpenter, and Plaintiff Cresci." (*Id.*) This contention may be intended to link to Point IV, in which Cresci argues that Gyss "does not have qualified immunity for the false prosecution, false detainer, and failure to adhere to R. 7:13-1, R. 3:24(c)." (Pl. Brf. 11) The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).) Qualified immunity, however, is not asserted here. It is a completely separate doctrine from absolute prosecutorial immunity.

In Point II, Cresci argues that Gyss in her personal capacity is a "person" for purposes of § 1983 and that an action against her is not barred by the Eleventh Amendment. *See, e.g., Will v. Michigan Dep't of State Police,* 491 U.S. 58, 67–71 (1989). True enough, but this is concededly an action seeking damages against Gyss personally, and she does not argue otherwise.

detention. So understood, Claims B and C would implicate the core prosecutorial functions of bringing and pursuing criminal charges.

Claim D (abuse of process) is opaque. Paragraph 16 of the facts section, however, perhaps clarifies what is meant:

> 16. . . . Defendant Gyess was so intent of abusing process that she filed the appeal to her husband, Gaetano Gregory, at the Hudson County Prosecutor's Office without the knowledge of Presiding Municipal Court Judge Frank Carpenter. Judge Carpenter is the very Judge who denied probable cause on this Landlord-Tenant issue. Further, tenant Harris was guided by Defendant Gyess to file a judicial complaint in Trenton against Frank Carpenter, for which the judge had to respond and address Defendant Gyess' actions.

(AC ¶ 16) An appeal of a probable cause denial would fall within the prosecutorial function. One aspect—the vague allegation of "guid[ing]" Harris in filing a judicial complaint—might fall outside the scope of prosecutorial immunity. The allegation is simply too vague, however, to state a claim or permit further analysis.

The Amended Complaint does not allege with clarity any conduct that falls outside the prosecutorial function. True, there are stray, nonspecific allegations of, *e.g.*, false press releases, which could fall outside the scope of immunity. These, however, are unsupported by any factual allegations, and they appear to have no connection to any action of Gyss. Constitutional claims A, B, C, D, E, and F are therefore dismissed based on prosecutorial immunity.

## IV.   Other Grounds for Dismissal (Federal Claims)

Setting aside prosecutorial immunity, Gyss raises alternative grounds for dismissal of the federal claims, A, B, C, D, E, and F. I discuss those grounds, not only as alternatives, but as justification for my decision to dismiss based on prosecutorial immunity with prejudice. It appears that granting a second opportunity to amend would be futile.

In subsection IV.A, I discuss the claims individually. Although the allegations are mixed and overlapping, I have attempted to segregate the discussion according to the cause of action alleged. The statute of limitations, although potentially applicable across the board, is most consequential in relation to Claim E, so I discuss it there. In Subsection IV.B, I discuss the allegation, which reappears at various points in the Amended Complaint, that Gyss was not permitted to practice criminal law in the County where her husband was Acting County Prosecutor.[10]

## A. Failure to Plead A Claim

To survive a motion to dismiss, a complaint must plead facts, and not mere conclusions, sufficient to plausibly allege the elements of a recognized cause of action. *See* Section II, *supra* (citing *Twombly, supra; Iqbal, supra*). That the Amended Complaint fails to do.

### 1. Malicious prosecution (Claim A)

Claim A alleges a § 1983 claim of malicious prosecution. That Fourth Amendment cause of action requires, *inter alia,* that the underlying criminal prosecution "was initiated without probable cause" and that, as a result, "the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005); *accord Halsey v. Pfeiffer*, 750 F.3d 273, 295-97 (3d Cir. 2014) (citing *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007)). A "prosecution without probable cause is not, in and of itself, a constitutional

---

[10]     One technical basis for dismissal, however, I will reject. Defendant asserts that the Amended Complaint should be dismissed because plaintiff failed to serve the original complaint within 90 days after filing. The remedy would be dismissal without prejudice or an order that service be made within a specified time. *See* Fed. R. Civ. P. 4(m). Even if I granted the motion, I would likely choose the latter option, given that an amended complaint has been filed and the parties have joined issue on the merits. Gyss, by the way, has already received a similar indulgence from the Court. She failed to answer the original complaint and was forced to file a motion to vacate default, which the court granted. (DE 7, 8, 9, 10)

tort. Instead, the constitutional violation is the deprivation of liberty accompanying the prosecution"—*i.e.*, a Fourth Amendment seizure. *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998). A "seizure" is defined generally to occur "only when there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989).

Here, no such seizure is alleged. Indeed, it is not clear just what is alleged. No arrest is alleged, and it appears that the matter was charged by Complaint-Summons, not Complaint-Warrant. (*See* n.4, *supra*; *see generally* N.J. Ct. R. 7:2-1.) The Amended Complaint states in conclusory terms that Cresci was "detained" or "confined," but does not allege that he was even briefly imprisoned, or that his freedom of movement was curtailed. The following allegation provides a clue as to Cresci's meaning:

> Defendant[']s actions caused Plaintiff to be held against his will and restricted his freedom to leave or pursue matters important to him.

(AC ¶ 20) These are conclusions, not facts, but they seem to relate to the allegation that Cresci made "several required appearances in court." (AC ¶ 10)

The claim, then, would be that, simply by virtue of being charged and required to make court appearances, Cresci was "seized" for Fourth Amendment purposes. As to such an alleged "seizure" in connection with a malicious prosecution claim, the Third Circuit has summarized the law thus:

> In *Gallo v. City of Philadelphia*, we held that a plaintiff seeking section 1983 relief for violation of his Fourth Amendment rights was seized post-indictment because he had to post a $10,000 bond, attend court hearings including his trial and arraignment, contact Pretrial Services on a weekly basis, and was prohibited from travelling outside of two states, New Jersey and Pennsylvania. 161 F.3d at 222. Noting that we had adopted "a broad approach in considering what constitutes a seizure," *id.* at 224, we concluded "that the combination of restrictions imposed

12

upon Gallo, because they intentionally limited his liberty, constituted a seizure," *id.* at 225.

  In contrast, in *DiBella v. Borough of Beachwood*, we held that the plaintiffs were not seized when "only issued a summons; they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services." 407 F.3d at 603. We noted that unlike the "significant pretrial restrictions" imposed in *Gallo*, the plaintiffs' liberty in *DiBella* was restricted only during their municipal court trial and that merely attending trial does not amount to a seizure for Fourth Amendment purposes. *Id.* We further explained that "[p]retrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure." *Id.*

*Black v. Montgomery Cty.*, 835 F.3d 358, 367 (3d Cir. 2016), as amended (Sept. 16, 2016), *cert. denied sub nom. Pomponio v. Black*, 137 S. Ct. 2093 (2017). *See also Holmes v. McGuigan*, 184 F. App'x 149, 151–52 (3d Cir. 2006) (finding no seizure where "the only deprivation of liberty that resulted from [plaintiff's] traffic citation was the requirement that she appear in court. . . . [H]aving to defend oneself against a speeding ticket is not a seizure."); *Mantz v. Chain*, 239 F. Supp. 2d 486, 503 (D.N.J. 2002).[11]

  This was a disorderly-persons charge, pursued via summons, which never went to trial and was eventually dismissed. The Amended Complaint

---

[11] I note in addition that the Amended Complaint alleges in conclusory terms, but not factually, that the underlying charge of harassment was not supported by probable cause. Lack of probable cause is defined as the absence of "facts and circumstances within [the charging authorities'] knowledge and of which they had reasonably trustworthy information [that] were sufficient to warrant a prudent [person] in believing that [the suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (citation omitted). The Amended Complaint says virtually nothing about the underlying facts and allegations. The malicious prosecution claim is based on the initial denial of probable cause by the municipal court, coupled with an "appeal" that did not comply with state-law procedural requirements. Any arguable violation of state appeal procedures would not detract from the factual existence of probable cause in the *Beck v. Ohio* sense. As to that issue, however, the Amended Complaint says nothing.

does not allege that there were any pretrial restrictions on Cresci's freedom of movement, let alone extraordinary or onerous restrictions that would amount to a Fourth Amendment seizure. For this independent reason, Claim A (malicious prosecution), even if it survived the prosecutorial-immunity analysis, would be dismissed.

## 2. Excessive force/unlawful detention (Claims B & C)

Claims B and C asserts § 1983 causes of action for excessive force and unlawful detention. Both are Fourth Amendment claims, and therefore require a "seizure." For the reasons stated in the preceding section, no such seizure is alleged.

To prevail on a § 1983 excessive force claim, "a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances." *Lamont v. New Jersey*, 637 F.3d 177, 182–83 (3d Cir. 2011). *See also Graham v. Connor*, 490 U.S. 386, 395 (1989); *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004). A § 1983 claim of unlawful detention requires "(1) the detention of the person, and (2) the unlawfulness of that detention" under the Fourth Amendment. *Marable v. W. Pottsgrove Twp.*, 176 F. App'x 275, 280 (3d Cir. 2006); *see also James v. City of Wilkes-Barre*, 700 F.3d 675, 683 (3d Cir. 2012). In either case, the claim rests on the Fourth Amendment and is predicated on a Fourth Amendment "seizure." *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 917 (2017); *James, supra* (officer's insistence that child be taken to hospital and that a parent accompany the child was not a "seizure" of the parent).

The Amended Complaint makes no factual allegation sufficient to support an inference that Cresci was detained, arrested, imprisoned, or seized in any way. For this alternative reason, Claims B & C must be dismissed.[12]

---

[12]     Without further elaboration, Claim B alleges that "Defendant subscribed and signed the oath on the inappropriate format on no less than 3 occasions." (AC ¶ 28) I am unable to interpret this allegation.

### 3. Claim D (Abuse of process)

As noted above, Claim D is opaque, but the best guide to what was intended may be found in the Facts section:

> . . . . Defendant Gyess was so intent of abusing process that she filed the appeal to her husband, Gaetano Gregory, at the Hudson County Prosecutor's Office without the knowledge of Presiding Municipal Court Judge Frank Carpenter. Judge Carpenter is the very Judge who denied probable cause on this Landlord-Tenant issue. Further, tenant Harris was guided by Defendant Gyess to file a judicial complaint in Trenton against Frank Carpenter, for which the judge had to respond and address Defendant Gyess' actions.

(AC ¶ 16) These factual allegations do not set forth a § 1983 claim of abuse of process.

"[A] claim of malicious use of process may state a Section 1983 claim if it includes the elements of that common law tort as it has developed." *McArdle v. Tronetti*, 961 F.2d 1083, 1088 (3d Cir. 1992). Judge Bumb, in a § 1983 case, has helpfully summarized those developing common-law principles:

> For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended. The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it.

> Restatement (Second) of Torts § 682 cmt. b (2012). To state a claim for abuse of process in New Jersey, the plaintiff must allege: (1) a coercive, illegitimate, or improper use of the judicial process; (2) an "ulterior motive" by the defendants; and (3) "some further act after the issuance of process representing the perversion of the legitimate use of the process." *Simone v. Golden Nugget Hotel & Casino*, 844 F.2d 1031, 1036–37 (3d Cir. 1988) (citing *Fielder Agency v. Eldan Constr. Corp.*, 152 N.J. Super. 344, 377 A.2d 1220, 1222 (N.J. Super. Ct. Law Div. 1977)); *see also Coles v. Carlini*, Civ. No. 10–6132, 2012 WL 1079446, *12 (D.N.J. Mar. 29, 2012). While they are not mutually exclusive, a claim for abuse of process differs from a claim for malicious prosecution in that the former concerns the "improper, unwarranted, and perverted" use of

legal process after it has been initiated, while the latter concerns a legal proceeding that has been initiated maliciously and without probable cause. *Ash v. Cohn*, 119 N.J.L. 54, 194 A. 174, 176 (N.J. 1937) (citation omitted); *Coles*, 2012 WL 1079446 at *12.

*Batiz v. Brown*, No. CIV. 12-581 RMB/AMD, 2013 WL 1137531, at *3 (D.N.J. Mar. 14, 2013).

This tort is distinct from malicious prosecution, *i.e.*, the illegitimate institution of criminal proceedings. Indeed, the "process" that is "abused" may be entirely legitimate in its origins. What abuse of process requires is some act "after an issuance of process representing the perversion of the legitimate use of the process." *SBK Catalogue Partnership v. Orion Pictures Corp.*, 723 F. Supp. 1053, 1067 (D.N.J. 1989). There must be "'further acts whereby [the defendant] demonstrably uses the process as a means to coerce or oppress the plaintiff." *Ruberton v. Gabage*, 280 N.J. Super. 125, 130 (App. Div. 1995) (citations omitted).

The essential conduct alleged is that Gyss intervened in order to bring about the issuance of process (which had been declined) against Cresci. Secondarily, she is alleged to have somehow "guided" Gonzales to file a judicial misconduct complaint. These precede the issuance of process. Neither constitutes a perversion of the legitimate purposes of process after it was issued. Indeed, the Amended Complaint alleges no actions at all by Gyss once the criminal charges had been lodged.

So even setting aside prosecutorial immunity, *see supra*, Claim D (abuse of process) would be dismissed for failure to state a claim.[13]

---

[13] I note in addition that these acts, whatever they were, occurred during Gyss's tenure, and before the case was transferred to Kearny, suggesting that they are time-barred as well. *See* Section IV.A.4.b & n.18, *infra*.

### 4. Claim E (First Amendment retaliation/Title VII)

#### a) Title VII

To the extent Claim E may contain a Title VII claim, that component of it is dismissed. Although the title of Claim E refers to Title VII (*i.e.*, 42 U.S.C. § 2000e *et seq.*), it is not clear that a Title VII claim was truly intended. The factual allegations refer to Title VII only as one of a generic list of kinds of claims that Cresci, as an attorney, has brought against municipal agencies or officials. (AC ¶ 46)

At any rate, Title VII is not apt; a workplace discrimination statute, it prohibits two categories of wrongful employer conduct:

> The first type is called, for purposes of this opinion, status-based discrimination. The term is used here to refer to basic workplace protection such as prohibitions against employer discrimination on the basis of race, color, religion, sex, or national origin, in hiring, firing, salary structure, promotion and the like. See § 2000e–2(a). The second type of conduct is employer retaliation on account of an employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination. See § 2000e–3(a).

*Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342, 133 S. Ct. 2517, 2522 (2013).

Cresci is not here asserting his rights as an employee. Nor is he faulting Gyss's conduct as an employer. *Sheridan v. E.I. DuPont De Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) (employers, not individual employees, are proper defendants under Title VII).[14] No Title VII claim of discrimination or retaliation is alleged.

#### b) First Amendment/Statute of limitations

I read Claim E instead as asserting a First Amendment retaliation claim.

---

[14] Nor does the Amended Complaint allege that Cresci has fulfilled the prerequisite of timely filing a charge with the EEOC. *See, e.g., Comms. Workers of Amer. v. N.J. Dept. of Personnel*, 282 F.3d 213, 216 (3d Cir. 2002). Cresci's motion papers contain no response to the defendant's argument on that point.

> In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

*Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

The Amended Complaint alleges the exercise of First Amendment rights of speech and petition. The First Amendment protects access to the courts, *e.g., Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997), as well as an individual's right to speak on matters of public or social concern, *see, e.g., Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001). Cresci, as attorney, has brought cases against the City of Bayonne, and "cooperated in several investigations regarding administrators known to defendant [Gyss]." (AC ¶ 46) Certain of those matters are listed by name. (AC ¶ 47) The retaliatory action alleged is, of course, the bringing of the harassment charge, which could be sufficient to deter a person of reasonable firmness. The Supreme Court has "never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). And in a prior case brought by Cresci, I granted qualified immunity to arresting officers because such a right was not clearly established. *Cresci v. Aquino*, No. CV134695KMJBC, 2017 WL 1356322, at *10 (D.N.J. Apr. 10, 2017).[15] Still, for an ordinary motion to dismiss the standard is different, and I will assume *arguendo* that an eventual finding of probable cause would not wholly vitiate a claim of retaliation.

---

[15] In July 2013, the Third Circuit noted that it had "not decided whether the logic of Hartman applies to retaliatory arrest claims, and so it appears that [the officer in that case] would be entitled to qualified immunity on the First Amendment claim." *Primrose v. Mellot*, 541 F. App'x 177, 180 n.2 (3d Cir. 2013) (emphasis added); *see also George v. Rehiel*, 738 F.3d 562, 586 (3d Cir. 2013) ("Because we have found that the individual Federal Officers' search and questioning ... did not violate [plaintiff's] Fourth Amendment rights, we are hard-pressed to find that it could result in a First Amendment retaliation claim.").

The causal link between Cresci's exercise of First Amendment rights and this criminal prosecution is alleged with less specificity. True, Gyss has a personal and family connection to the County Prosecutor's Office, and she serves the City of Bayonne as a contract municipal prosecutor. But legal representations against the municipality or cooperation in investigations of officials "known to" Gyss, without more, do not plausibly establish retaliation. Unless more specific factual pleading is required, the result would be an unwarranted grant of *de facto* immunity to attorneys who oppose a municipality in court. Claim E does, however, come closer than the others to setting forth a cause of action.

I will therefore assume *arguendo* that the basic elements of a retaliation claim have been pled and consider the statute of limitations. While the time-bar is potentially applicable to more than one claim, *see* n.18, *infra*, it is most consequential here.

Section 1983 claims are subject to the State's two-year statute of limitations for personal injury tort claims, contained in N.J. Stat. Ann. § 2A:14–2. *Patyrak v. Apgar*, 511 F. App'x 193, 195 (3d Cir. 2013) (per curiam) (citing *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010)). Federal law controls when a § 1983 claim accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a cause of action accrues, and the statute of limitations begins to run, "when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998) (citation omitted).

Because this action was filed on May 6, 2017, any cause of action that accrued before May 6, 2015, would be time-barred. The dates of Gyss's actions are not stated in the Amended Complaint, but the date *range* is clear. Her wrongful acts are said to have "stem[med] from May 16, 2014 during a very contentious municipal election." (AC ¶ 9) Perhaps that was the date of the attempted filing of the original criminal complaint for harassment; the Amended Complaint does not say. But Gyss's alleged actions, whatever they

were, must have occurred before Gyss was "subsequently terminated from her Position as Municipal Prosecutor." (*id.*) It is of public record that her position terminated in October 2014.[16] Any acts of retaliatory prosecution during Gyss's tenure, then, occurred long before May 6, 2015, the statute of limitations cutoff.

The accrual of the claim was not delayed by lack of knowledge, *see Sameric, supra,* nor was the limitations period tolled.[17] If the bringing of charges was in retaliation for his protected First Amendment activity, then Cresci knew he had a cause of action at the time. Even now, he alleges no *new* information; he states only that he frequently was adverse to the City (or the Prosecutor's Office). If the inference that the municipal court prosecution was retaliatory can be drawn at all, presumably it could have been drawn then.[18]

---

[16]    The Amended Complaint refers to a date of May 16, 2014, and states that Gyss was "subsequently terminated from her position as Municipal Prosecutor". (AC ¶ 9) Gyss states, and it is a matter of public record, that she served as municipal prosecutor from 2010 through October 14, 2014. (DE 7-2 at ¶ 2) Although it is irrelevant to the claims, I note for completeness that Gyss started serving another term as municipal prosecutor as of August 1, 2017.

Gyss's actions, in addition, preceded the transfer of the case to the municipal court in Kearny. That transfer necessarily preceded that court's dismissal of the charges on May 7, 2015. And that date preceded the filing of the complaint in this action by two years minus one day.

[17]    In a proper case, the court must consider whether the limitations period was suspended, or tolled, *see Wisniewski v. Fisher,* 857 F.3d 152, 157 (3d Cir. 2017), an issue governed by state law, *McPherson v. United States,* 392 F. App'x 938, 944 (3d Cir. 2010) (citing *Dique,* 603 F.3d at 185). Statutory tolling, under New Jersey law, may arise from bases specifically listed. *See, e.g.,* N.J. Stat. Ann. § 2A: 14–21 (minority or insanity); N.J. Stat. Ann. § 2A: 14–22 (non-resident defendant). Equitable tolling may be appropriate "where 'the complainant has been induced or tricked by his adversary's misconduct into allowing the deadline to pass,' or where a plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum." *Cason v. Arie Street Police Dep't,* No. 10–0497, 2010 WL 2674399, at *5 n. 4 (D.N.J. June 29, 2010) (citing *Freeman v. State,* 347 N.J. Super. 11, 31, 788 A.2d 867 (N.J. Super. Ct. App. Div. 2002)). No basis for statutory or equitable tolling of the First Amendment retaliation claim is pled in the Amended Complaint or suggested by the circumstances.

[18]    The application of the statute of limitations to other claims is less clear, at least at the motion to dismiss stage. The statute of limitations defense may be considered on a motion to dismiss, but only on the basis of the face of the complaint and other

### 5. Conspiracy

Claim F alleges that Gyss committed her unconstitutional acts in combination with listed associates, whose activities are not otherwise described. Adding these names does nothing to rehabilitate the claims against Gyss, which I have already found to be legally inadequate. The motion to dismiss Claim F is therefore granted.

### B. Spousal Conflict of Interest

Scattered throughout the Amended Complaint are references to Gyss's holding her municipal prosecutor position at a time when her husband, Gaetano Gregory, was the Acting Hudson County Prosecutor.[19] The Facts section of the Amended Complaint alleges that under some unspecified state statute, "Defendant [Gyss] was violating the law by practicing criminal law within the county in which her husband was the county prosecutor." (AC ¶ 15)

---

items properly considered on a Rule 12(b)(6) motion. *See Fried v. JP Morgan Chase & Co.*, 850 F.3d 590, 604 (3d Cir. 2017); *see also Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978).

It is true of course that § 1983 causes of action like the ones alleged here will generally accrue "at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). For example, "[f]or a search [the time of accrual] is the moment of the search. For a false arrest, that is the moment when legal process justifies the detention or, absent legal process, the moment of release." *Nguyen v. Commonwealth of Pennsylvania*, No. 17-3654, slip op. at 5 (3d Cir. Oct. 10, 2018) (citing *Wallace*, 549 U.S. at 390–91). But Cresci alleges here that it was only "[d]uring the previous ten (10) months" that he uncovered some of the alleged behind-the scenes machinations of Gyss (AC ¶ 16), so he may intend to argue factually that the accrual date of some of the claims was delayed. Such issues cannot necessarily be resolved on a Rule 12(b)(6) standard, and it is unnecessary to reach them.

The malicious prosecution claim stands on a different footing. It does not accrue until the underlying criminal proceeding terminates in the plaintiff's favor. *See Heck v. Humphrey*, 512 U.S. 477, 489 (1994). The Kearny municipal court allegedly dismissed the charges on May 7, 2015, and Cresci filed this action two years minus one day later, on May 6, 2017. A malicious prosecution claim, then, is timely as alleged.

[19]     Gyss, as noted, became a Bayonne municipal prosecutor in 2010. It appears from publicly available information that Gregory was promoted to Acting County Prosecutor in mid-2012, after the then-County Prosecutor was appointed to the state bench. Gregory continued as Acting Prosecutor until June 2015, when the position of County Prosecutor was again filled.

"Defendant circumvented the requirement that relatives, specifically spouses, are prohibited from practicing criminal law in which a relative, in this case a husband, is a county prosecutor." [sic] (AC ¶ 9)

Under Claim B (excessive force), the Amended Complaint alleges still more obscurely that "Defendant subscribed and signed the oath on the inappropriate format on no less than 3 occasions. Defendant with incorrect advice, direction from her husband Gaetano Gregory, then the acting prosecutor of Hudson county; believed she could violate Plaintiff's civil rights when in fact she was in a position she could not legally and statutorily hold." (AC ¶ 28)

The relation between this allegation and the excessive force claim is unclear. The sense may be that because a spousal conflict of interest rendered Gyss's appointment illegitimate, *any* force she caused to be applied was therefore "excessive" (and perhaps *any* prosecution she undertook was therefore malicious). This federal court does not sit to determine the legitimacy of appointments under state law (particularly where the lawyer-plaintiff, given several opportunities, will not specify what law he is talking about).[20] Nor is any authority offered for the proposition that such a conflict of interest, if it existed, would constitute a violation of federal constitutional rights.

Finally there remains, of course, the statute of limitations. Gyss's entire relevant tenure as municipal prosecutor lies outside the two-year limitations period (*see supra*), and there is no allegation that her marriage to Gregory was or could have been concealed from any reasonably diligent inquirer.[21]

---

[20]     N.J. Ct. R. 1:15-3(a) provides that a county prosecutor may not "practice on behalf of any defendant in any criminal, quasi-criminal or penal matter . . . ." N.J. Ct. R. 1:15-3(b) provides that a municipal prosecutor "shall not represent any defendant in the municipal court thereof . . . ."

Those prohibitions, directed at those who would simultaneously represent both the prosecution and a criminal defendant, do not embody the disqualification rule posited by Cresci here.

[21]     The allegation that Gyss was somehow improperly "[u]sing her maiden name" (AC ¶ 15), a common enough practice, does not plausibly suggest a plan to conceal the conflict. She registered as an attorney under the name of Gyss in 1981, and remains

## V.  State-Law Claims

Claim G alleges the state-law tort of unlawful interference with prospective economic advantage (consisting of some general but unspecified pursuit of the legal profession). Claim H alleges tortious interference with contract (*i.e.,* the lease between Cresci and Gonzales, which Cresci was seeking to terminate). Claim J seeks a declaratory judgment that "pursuant to statute" Gyss was improperly practicing criminal law in the same County in which her husband was acting prosecutor. Gyss asserts a number of arguments for dismissal of these state-law claims, but I do not reach them. I will decline to exercise supplemental jurisdiction.

For the reasons expressed above, the Amended Complaint contains no viable federal cause of action. When a court has dismissed all claims over which it had original federal-question jurisdiction, it has the discretion to decline to exercise supplemental jurisdiction over any remaining state-law claims. *See* 28 U.S.C. § 1367(c); *see also Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)). Where, as here, the federal claims are dismissed at the early, Rule 12(b)(6) stage of litigation, declination of supplemental jurisdiction is fairly routine. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). This case is in its early stages, and discovery has been stayed. The federal claims are insubstantial. No considerations of judicial economy, convenience, fairness, or comity weigh in favor of retaining a few makeweight, nonspecific state law claims. The state-law claims are therefore dismissed on jurisdictional grounds.

## VI.  Dismissal With or Without Prejudice

The Third Circuit has liberally permitted pleading amendments to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990).

---

registered under that name today. *See* Attorney Search Results for "Susan Gyss," https://portal.njcourts.gov/webe7/prweb/PRServletPublicAuth/-amRUHgepTwWWiiBQpI9_yQNuum4oN16*/!STANDARD?AppName=AttorneySearch.

Indeed, where a complaint is dismissed on Rule 12(b)(6) grounds, "a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (emphasis added). *Accord Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)).

It is true that this is the first order of dismissal. The Complaint, however, has already been amended once. Cresci submitted the Amended Complaint in response to a prior motion to dismiss and for sanctions which asserted grounds similar to those asserted here. In response to the new complaint, the motion to dismiss was terminated and the defendant was forced to revise and refile it. In short, Cresci headed off dismissal by submitting an amended pleading that purported to cure the defects of the original—in particular, the failure to rebut prosecutorial immunity or repair the substantive legal defects of the individual counts. That Amended Complaint, however, fails to fix the problems that had been forcefully brought to the plaintiff's attention. The plaintiff, who is an attorney, represents himself, and was a participant in the underlying events; he was not required to consult a third-party client to obtain the basis for any omitted allegations.

I conclude that amendment would be inequitable and futile. The dismissal is therefore with prejudice.

## CONCLUSION

For the foregoing reasons, the motion of the defendant, Susan Gyss, to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), is GRANTED, with prejudice. An appropriate order is filed herewith.

Dated: October 15, 2018

**HON. KEVIN MCNULTY**
**United States District Judge**